■ SIDNEY DULMAN, Doing Business as BAKERS MACHINERY COMPANY, Respondent, v POTOMAC BAKING CO., INC., Appellant. — In an action to recover damages for breach of contract, defendant appeals from an order of the Supreme Court, Westchester County (Daronco, J.), entered August 15, 1979, which denied its motion to dismiss the complaint for lack of personal jurisdiction. By order dated May 19, 1980, this court remanded the case to Special Term for an evidentiary hearing, and, in the interim, the appeal has been held in abeyance (*Dulman v Potomac Baking Co.*, 75 AD2d 863). Special Term (Cerrato, J.), has complied and rendered its report. Order affirmed, with costs. The plaintiff, a New York resident, sells used bakery equipment. The defendant is a Maryland corporation engaged in the manufacture of baked goods. Frank Kraus is its president and his two sons and one of their friends are the corporation's shareholders. In August, 1977, Kraus and his sons decided to expand their operation, and, pursuant to a search for an appropriately larger oven, responded to an advertisement placed by plaintiff in a trade magazine announcing the availability of such an oven. The oven was located at Bellman's Bakery in Queens, which plaintiff had acquired through Federal bankruptcy proceedings. On or about October 1, 1977, Kraus and his sons flew to New York to inspect the oven. They spent approximately one hour at Bellman's while plaintiff demonstrated the oven for them, decided to buy it, and gave plaintiff a $5,000 check toward the purchase price of $25,000. Kraus and his sons then returned to Maryland. In November, 1977, Kraus changed his mind and called plaintiff to terminate the sale and obtain a refund of the $5,000. Plaintiff obliged by sending defendant a check in this amount. Shortly thereafter, Kraus reconsidered and called plaintiff. The parties agreed to the sale and Kraus sent plaintiff a check in the amount of $10,000. Defendant then hired one Ernest Connelly of Florida to disassemble the oven for shipment to Maryland at defendant's expense. On December 9, 1977, after Connelly had allegedly complained to Kraus concerning some aspect of the disassembly, Kraus and one of his sons flew to New York to, according to Kraus, "inspect the progress of the dismantling of the oven." According to plaintiff, Kraus addi-

tionally voiced a desire to come to New York to discuss the purchase of other equipment needed in defendant's prospective operation. Together with plaintiff, Kraus and his son spent about one and a half hours at Bellman's Bakery. Thereafter, according to plaintiff's hearing testimony, the three traveled by car to a bakery in Bridgeport, Connecticut, to inspect various pieces of bakery equipment and then returned to plaintiff's offices in Yonkers where they agreed to the sale of certain equipment. Kraus and one of his sons both testified that they never went to Connecticut or to Yonkers. Kraus left a second $10,000 check with plaintiff that day; a third was mailed from Maryland on a subsequent date. At the conclusion of the hearing, Special Term found that defendant's principals had in fact traveled with plaintiff to Connecticut and then to Yonkers where they had agreed to purchase certain equipment from him. We adopt Special Term's finding and conclude that, as to the parties' contract or contracts for the sale of bakery equipment other than the oven, there was no error in the denial of defendant's motion to dismiss the complaint for lack of personal jurisdiction (see, generally, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C302:10, C302:11). However, as it appears that the parties separately contracted for the sale of the oven (see 6 Williston, Contracts [Jaeger 3d ed], § 863), the plaintiff must establish sufficient New York acts with respect to the cause of action for breach of that contract. An out-of-State buyer will not be held to have transacted business in New York by placing a telephone order to a New York seller who ships the goods F.O.B. its factory in New York (*Katz & Son Billiard Prods. v Correale & Sons,* 26 AD2d 52, affd 20 NY2d 903). In the instant matter, however, defendant's principals on two occasions performed "purposeful acts" (see *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, 457) in New York in connection with their purchase of the oven. The trip to this State on or about October 1 significantly advanced the eventual making of this contract, especially in light of Kraus' testimony that in his 40 years in the bakery business, he always personally inspected equipment prior to purchase. On December 9, an individual hired by defendant was disassembling the oven; this New York activity is attributable to the defendant (see *Abbate v Abbate,* 82 AD2d 368, 384). Moreover, the defendant's principals themselves supervised at least some of this work (cf. *Longines-Wittnauer Watch Co. v Barnes & Reinecke, supra*). Although "physical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302 (subd [a], par [1])" (*Presidential Realty Corp. v Michael Sq. West,* 44 NY2d 672, 673), the instant defendant's activities in New York in October and December of 1977 designedly and materially forwarded the negotiation and performance of the contract for the sale of the oven. Therefore, we also affirm the denial of the motion as to the cause of action for breach of that contract. Mollen, P. J., Hopkins, Titone and Mangano, JJ., concur.