**NEW WORLD CAPITAL CORPORATION,**
Plaintiff,

v.

**POOLE TRUCK LINE, INC. and Walter L. Poole, Defendants.**

**No. 84 Civ. 5432 (GLG).**

United States District Court, S.D. New York.

June 20, 1985.

**168**

Reaves & Yates, New York City, for plaintiff; Ray L. LeFlore, James A. Reaves, New York City, of counsel.

Friedman & Gass, P.C., New York City, for defendants; Arthur S. Friedman, Laurie P. Josephs, New York City, and Richard A. Ball, Jr., Ball, Ball, Duke & Matthews, P.A., Montgomery, Ala., of counsel.

## OPINION

GOETTEL, District Judge:

The plaintiff, New World Capital Corporation ("New World"), is a Delaware corporation with its principal place of business in New York. It specializes in locating companies that wish to be acquired and matching them with companies seeking acquisitions.

This action arises out of a written agreement dated August 23, 1979, between New World and defendant Poole Truck Line, Inc. ("Poole Truck"), an Alabama corporation with its principal place of business in Evergreen, Alabama. The agreement provided that New World would attempt to locate a purchaser for Poole Truck. In return, Poole Truck would pay New World a "finder's fee" if New World introduced Poole Truck to its eventual purchaser.

On or about June 9, 1980, New World introduced IU International Corporation ("IU") to Poole Truck as a potential buyer. IU initially advised New World that it was not interested in the acquisition. Subsequently, unbeknownst to New World, IU and Poole Truck entered into negotiations. On October 6, 1983, the Wall Street Journal reported that IU had agreed to acquire Poole Truck. On or about February 2, 1984, the sale was completed. Poole Truck refused to pay New World its "finder's fee."

On July 26, 1984, New World commenced this action against Poole Truck and Walter Poole, Poole Truck's president and the former owner of 50% of its stock. New World asserted a claim against Poole Truck for breach of contract and against Walter Poole for tortious interference with the Poole Truck/New World agreement. Though this factual scenario may evoke some sympathy for the plaintiff, the merits of the dispute are not before the Court.

Before us are the defendants' motions pursuant to Fed.R.Civ.P. 12(b) to dismiss both claims for lack of personal jurisdiction. Because the parties rely on numerous affidavits and exhibits outside of the pleadings, the Court will treat this as a motion for summary judgment. *See* Fed.R. Civ.P. 12(b)(6). Even when viewed in a light most favorable to the plaintiff, the facts do not support the exercise of personal jurisdiction over either defendant.[1] The defendants' motions are, therefore, granted.

### I. *Jurisdictional Facts*

The pertinent jurisdictional facts are summarized below. Poole Truck is an in-

---

**1.** The burden of establishing jurisdiction over a defendant, by a preponderance of the evidence, is upon the plaintiff. Until an evidentiary hearing is held, however, the plaintiff need make only a prima facie showing that jurisdiction exists, and this remains true notwithstanding a controverting presentation by the moving party. In the absence of an evidentiary hearing on the jurisdictional allegations, or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in plaintiff's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

The Court has resolved all legitimate evidentiary disputes in favor of the non-moving party. Despite this advantage, the plaintiff has not made out its *prima facie* case. In these circumstances, the Court perceives no reason for holding an evidentiary hearing.

terstate trucking concern that hauls freight interstate under the authority of the Interstate Commerce Commission ("ICC"). Poole Truck has intrastate authority to haul freight in only two states, Alabama and Mississippi.[2] Alabama is Poole Truck's state of incorporation and principal place of business. Poole Truck is not licensed to do business in New York and has no registered agent for service of process under the laws of New York.[3] It has never employed a freight broker in this state. It has no office, warehouse, terminal, or other real property in this state and does not employ an agent to solicit business in New York. It has no New York telephone number, employs no persons in New York, maintains no New York bank account, and does not advertise in New York.

Poole Truck's primary contact with New York is its operation of interstate routes, one way, into or out of New York. Poole Truck's drivers pick up and deliver goods to and from New York on a daily basis. Between January 1, 1983, and September 30, 1984 (a random but illustrative time period), Poole Truck invoiced its customers a total of $9.6 million for over 300 million pounds of goods hauled into and out of New York. During that period, Poole Truck's New York activities never exceeded 1.5% of its total business activities as measured by miles traveled.[4] Poole Truck has no authority to haul goods under contract from any New York carrier. The ICC has permitted Poole Truck to operate as a contract carrier for the James River Corporation, a Virginia corporation for whom Poole Truck does some hauling into and out of New York.

During the four years prior to the commencement of this action, Walter Poole made three trips to New York to solicit hauling. Robert E. Tate, Poole Truck's former executive vice-president, made five such trips. Poole Truck made no other efforts to solicit business from New York shippers. Poole Truck maintains a mailing list that includes the addresses of New York shippers and shipping consultants. Those on the list receive Poole Truck's

2. Appended to the plaintiff's opposition papers is an affidavit from a licensed private investigator who states that a Poole Truck dispatcher informed him that Poole Truck could haul a load intrastate from New York City to Syracuse, New York. Prusan Affidavit. Poole Truck submitted the affidavit of Ronnie Kent, an employee in its customer service department, to counter this assertion. According to Kent, "On November 19, 1984, a woman called Poole [Truck] requesting a shipment from New York City to Syracuse .... [Kent] explained to her that [Poole Truck] did not have authority to haul from New York City to Syracuse, but she didn't seem to understand and seemed to be somewhat confused." Kent Affidavit at 1.

Although these contrasting affidavits raise an issue of fact as to what the Poole Truck employee said on that day, this factual dispute does not avail the plaintiff. Poole Truck does not have authority to haul loads intrastate in New York, and the plaintiff has presented no evidence indicating that Poole Truck ever actually exceeded its authority in this regard. See Affidavit of Walter Poole, Sept. 11, 1984 ¶ 16.

3. Poole Truck does maintain an agent for service of process in New York in compliance with Section 221(c) of the Interstate Commerce Act, 29 U.S.C. § 10330(b) (1982). That agent's function is to receive service of process in suits arising out of the defendant's activities as an interstate carrier. The agent's presence in New York does not bear on suits unrelated to those activities. Davies v. Mahanes, 183 F.2d 671, 673 (2d Cir.1950).

4. Because Poole Truck operates interstate transportation routes through New York, it files New York state tax returns pursuant to N.Y.Tax Law §§ 183 and 184 (McKinney 1966). Section 183 imposes a tax on transportation companies based on their capital stock allocable to New York. The portion of capital stock allocable to New York is the ratio of the company's gross assets employed in New York to total assets. Since Poole Truck has no assets in New York, it has paid the minimum tax of $75 in the preceding three years. Section 184 imposes an "additional" franchise tax on transportation companies based on gross earnings allocable to New York. Earnings for a motor carrier are allocated by multiplying total earnings by a fraction, the numerator of which is mileage covered in New York and the denominator of which is mileage within and without the state. According to New York franchise tax records, Poole Truck's earnings allocable to New York have never exceeded 1.5%. Poole Truck also pays a combined highway and fuel use tax in New York.

current tariff quotations.[5] Poole Truck does not otherwise solicit the business of those on the list. Poole Truck's drivers and terminal operators frequently telephone those receiving freight in New York to arrange for someone to accept delivery. Poole Truck also has a WATS telephone line over which it can be contacted from any point in the country including New York.

Prior to December 1978, R. Keating Hagmann, an officer at United States Trust Company, a New York bank, solicited Poole Truck's banking business. Poole Truck maintained a banking relationship with United States Trust from 1979 to 1982. During that time, the bank financed Poole Truck's equipment purchases. Although, on one occasion, Hagmann visited Poole Truck in Alabama to solicit new business, no agent or employee of Poole Truck ever traveled to New York on banking business.

In a 1979 telephone conversation with Walter Poole, Hagmann stated that he knew of a broker who had a prospect to purchase Poole Truck. Hagmann then forwarded a letter to Walter Poole containing a proposed letter agreement between Poole Truck and New World. The August 23, 1979 letter agreement was prepared from that form and signed and executed by Walter Poole and Robert Tate in Alabama. Poole then mailed the letter to New World in New York for execution. Between August 1979 and August 1983, New World introduced Poole Truck to more than thirty potential purchasers. Typically, New World would telephone Poole Truck, inform it that it had located a potential purchaser, and request Poole Truck's authorization to make an introduction. New World confirmed these "preclearance telephone calls" by letter. New World followed this procedure when it introduced Poole Truck to IU in June 1980.

In August 1981, Walter Poole traveled to New York and met for several hours with Randon Pavelic, an officer of New World, and members of a Dutch group whom New World had interested in purchasing Poole Truck. Walter Poole made another trip to New York in the same month to meet with another potential purchaser of Poole Truck, Mark Kaufman. New World did not introduce Poole Truck to Kaufman. Finally, Randon Pavelic asserts that he met with Walter Poole in New York City during a trip that Poole made to New Jersey in October 1982.[6]

## II. *Discussion*

 A federal court sitting in a diversity action must apply the jurisdictional statute of the state in which it sits. *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2d Cir.1963). The plaintiff asserts that Sections 301 and 302 of the N.Y. Civ.Prac.Law, N.Y.Civ.Prac.Law §§ 301, 302 (McKinney 1972) ("CPLR"), provide a basis for the exercise of jurisdiction over Poole Truck. According to the plaintiff, Walter Poole is subject to the Court's juris-

---

**5.** The plaintiff claims that Poole Truck solicits business from those on this list. Reaves Affidavit, February 5, 1985 ¶ 13. But according to Walter Poole,

> The persons and entities on the Poole Truck Line tariff computer printout constitute persons and entities to whom or which Poole Truck Line mails its tariffs. Poole Truck Line forwards tariffs to all persons or entities who request them. ICC regulations require that Poole furnish copies of appropriate tariffs when requested. The persons and entities [on the mailing list] ... are not necessarily shippers.

Supplemental Affidavit of Walter Poole, February 21, 1985, ¶ 2. The plaintiff has presented no evidence to contradict this explanation. Its conclusory allegation do not suffice to make out a *prima facie* case that Poole Truck solicits business from those on the list.

**6.** In an affidavit, Pavelic stated,

> I also met with defendant Poole in New York City and discussed New World's activities under the Poole/New World Agreement on one other occasion during a trip defendant Poole made I believe in October of 1982 to meet with a prospective buyer in New Jersey (Wes-Ray), which was also introduced to defendants through New World under the Poole/New World Agreement.

Pavelic Affidavit ¶ 8. Walter Poole's detailed recollection of his Wes-Ray trip contradicts Pavelic's assertions. According to Poole, he never met Pavelic or entered New York on that trip. Poole Affidavit ¶ 6. The Court has resolved this factual dispute in the plaintiff's favor.

diction under Section 302. The Court finds that neither section supports the assertion of jurisdiction over either Poole Truck or Walter Poole.

### A. *Poole Truck*

1. CPLR § 301: Doing Business.

■ CPLR § 301 vests the New York courts with the personal jurisdiction that they might have exercised prior to the section's enactment. "A non-resident defendant ... subject[s] itself to the personal jurisdiction of a New York court [under CPLR § 301] ... if it does business in this State." *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.*, 454 F.Supp. 858, 862 (S.D.N.Y.1978). "The test, though not 'precise' is a 'simple pragmatic one': is the aggregate of the corporation's activities in the State such that it may be said to be 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity....?'" *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692 (1982) (citations omitted). Although "the mysteries of corporate presence are no longer determinative of issues of personal jurisdiction over corporations" under the due process clause, *Scanapico v. Richmond, Fredericksburg & Potomac Railroad Co.*, 439 F.2d 17, 19 (2d Cir.1970) (en banc), "the classic 'presence test' is still followed in New York [under § 301], even though, constitutionally, the test may be unnecessarily restrictive of state jurisdictional power." J. McLaughlin Practice Commentaries, N.Y.Civ.Prac.Law § 301, C301:2 (McKinney 1972); *accord Laufer v. Ostrow, supra*, 449 N.Y.S.2d at 458, 434 N.E.2d 692.

Poole Truck exhibits none of the classic indicia of doing business in New York. It is not licensed to conduct business in the state. It maintains no local office or bank accounts,[7] possesses no New York proper-

ty, and does not have a local telephone number. *See Pneuma-Flo Systems, Inc. v. Universal Machinery Corp., supra*, 454 F.Supp. at 861 (listing classic indicia); *Masonite Corp. v. Hellenic Lines Ltd.*, 412 F.Supp. 434, 438 (S.D.N.Y.1976) (same). Poole Truck's hauling of freight into, out of, and through New York does not suffice to warrant a finding that Poole Truck is present and doing business in this state. *See Glacier Refrigeration Service, Inc. v. American Transportation, Inc.*, 467 F.Supp. 1104, 1106 (E.D.N.Y.1979) (Defendant who engaged in interstate delivery of small packages in New York and had neither a license to do business nor a place of business in New York was not "doing business" under CPLR § 301). Although such activity may be substantial, it is neither permanent nor continuous. Nor does this activity arise from a permanent locale. *See Meunier v. Stebo, Inc.*, 38 A.D.2d 590, 328 N.Y.S.2d 608, 611 (2d Dep't 1971) (continuity of action from some permanent locale or at least solicitation on a frequent and regular basis is the necessary minimum for a showing of doing business). Alabama and the other states where Poole Truck maintains terminal facilities are the locus of its business operations. New York is merely a recipient of its services, not a locus of operation.

■ Although Poole Truck has occasionally solicited business in New York, mere solicitation of business in New York is insufficient to support a finding of personal jurisdiction over a foreign corporation. *Hutton v. Piepgras*, 451 F.Supp. 205, 209 (S.D.N.Y.1978); *Laufer v. Ostrow, supra*, 449 N.Y.S.2d at 459. But solicitation plus additional business activities usually support a finding that a foreign corporation is doing business in New York. *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir.1970). The New York cases that examine when a

---

**7.** The plaintiff claims that Poole Truck's banking relationship with U.S. Trust is a contact that supports the exercise of jurisdiction under CPLR § 301. That banking relationship ended in 1982. Since "the reference point for determining 'presence' in New York is the time of commencement of the action," *Northpark National Bank v. Bankers Trust Co.*, 572 F.Supp. 520, 522 n. 7 (S.D.N.Y.1983), Poole Truck's past relationship with U.S. Trust does not bear on the jurisdictional issues before the Court.

foreign interstate carrier is doing business in New York adhere to this "solicitation-plus" rule. *Id.* A substantial degree of solicitation is needed to trigger the solicitation-plus rule. *Id. Dunn v. Southern Charters, Inc.,* 506 F.Supp. 564, 567 (E.D. N.Y.1981); " 'Occasional sales forays into the district' " will not implicate it, *Stark Carpet Corp. v. M-Geough Robinson, Inc.,* 481 F.Supp. 499, 505 (S.D.N.Y.1980) (quoting *Sterling Television Presentations, Inc. v. Shintron Co.,* 454 F.Supp. 183 (S.D. N.Y.1978)), nor will visits to New York every few months to solicit freight forwarding business. *Aquascutum of London, Inc. v. S.S. American Chieftan, supra,* 426 F.2d at 211–12. In addition, courts have refused to find substantial solicitation when revenues derived from the solicitation comprise an insubstantial portion of a defendant's total sales. *See e.g., Dunn v. Southern Charters, Inc., supra,* 506 F.Supp. at 567 ("It is doubtful that Seaward's solicitation activities ... are substantial enough to bring it within the 'solicitation-plus' rule. In percentage terms Seaward has never derived more than 1½% of its total sales revenue from its New York customers ...") and cases cited therein.

■ Eight visits over four years by Walter Poole and Robert Tate to solicit hauling constitute Poole Truck's total solicitation in New York. These contacts do not compare to the frequent visits that failed to impress the Second Circuit in *Aquascutum of London, Inc. v. S.S. American Chieftan, supra,* nor do they equal the presence of two employers in New York in *Scanapico v. Richmond, Fredericksburg & Potomac Railroad Co., supra,* 439 F.2d at 19—a case relied heavily upon by the plaintiff. Moreover, the plaintiff has not even asserted that either Poole or Tate successfully solicited any business during the eight trips noted above. Substantial solicitation imparts a degree of permanence to a defendant's contact that enables a court to find the defendant 'present' in the state. *Lauf-*

*er v. Ostrow, supra,* 449 N.Y.S.2d at 458, 434 N.E.2d 692. Poole Truck did not solicit enough business in New York to warrant consideration as present here or to bring it within the "solicitation-plus" rule. The Court does not have personal jurisdiction over Poole Truck under CPLR § 301.

2. CPLR § 302: Transaction of Business.

CPLR § 302(a)(1) vests the courts of the state of New York with "personal jurisdiction over any nondomiciliary ... who, in person or through an agent ... transacts any business within the state" as to any cause of action arising from such transaction. N.Y.Civ.Prac.Law § 302(a)(1) (McKinney 1972). Under this section, a court may acquire jurisdiction over a nonresident defendant who "purposefully avails itself of the privilege of conducting activities within [New York], thereby invoking the benefits and protections of its laws." *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 37–38, 229 N.E.2d 604 (1967) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The plaintiff asserts that CPLR § 302 applies because this action arises out of New World's activities in New York on Poole Truck's behalf and because it arises out of Poole Truck's own visits to New York in connection with its contract with New World.

■ The plaintiff's first contention is easily disposed of. When personal jurisdiction is asserted under CPLR § 302 by an agent against its principal, the former cannot, for jurisdictional purposes, attribute its activities in New York to the latter. *Haar v. Armendoris Corp.,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973); *rev'g,* 40 A.D.2d 769, 337 N.Y.S.2d 285 (1st Dep't 1972). The plaintiff's retention of New World, a New York corporation, as a finder, does not bear on the Court's jurisdiction under CPLR § 302(a)(1).[8]

---

**8.** The plaintiff did not attempt to impute its own conduct to Poole Truck for purposes of assert-

ing jurisdiction under CPLR § 301. Nevertheless, it is worth noting that the same principle

■ The second assertion is only slightly more problematic. In a "transacting business" analysis, neither the number of contacts nor their duration is dispositive; rather, their nature and quality controls. *Pneuma-Flo Systems, Inc. v. Universal Machinery Corp., supra,* 454 F.Supp. at 866. Poole Truck's contacts with New York in connection with the formation of the letter agreement are almost non-existent. In fact, its lack of contacts in this regard is striking. Poole Truck was solicited by New World in Alabama. There, the defendant executed its end of the agreement and forwarded it to New York. Although Poole Truck officers may have spoken with New World from Alabama, the plaintiff has not alleged that officers of Poole Truck initiated any of those conversations. Since the breach of contract action arises from the letter agreement, Poole Truck's contacts with New York in negotiating that agreement might subject it to this Court's jurisdiction. But there are no such contacts.

Walter Poole's two post-contract visits to New York in connection with the letter agreement are not of the nature and quality necessary to support a finding that Poole Truck submitted itself to the court's jurisdiction under CPLR § 302(a)(1). Neither of these visits had anything to do with this action. Once, Walter Poole met with a group of potential purchasers unconnected to this litigation. The second visit was apparently so unimportant that the plaintiff cannot recall its specifics. Had the meetings in New York concerned the purchase of IU, they might have been sufficient. However, the meetings were unrelated to that purchase. A fundamental requirement of CPLR § 302(a)(1) is that the cause of action asserted must arise out of the defendant's activities in New York. *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967).

that bars such an imputation under CPLR § 302 has been held to apply to Section 301. *Pneuma-*

Having established that defendants transacted business in New York, plaintiffs need show ... that the cause of action is sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York.

*Hoffritz For Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 59 (2d Cir.1985). This action bears little or no relation to the transactions in New York upon which the plaintiff relies. It would be unfair to subject the defendants to the Court's jurisdiction based on Walter Poole's two post-contract visits.

The only other post-contract communications between New World and Poole Truck were the "preclearance" telephone conversations and the follow-up correspondence from New World to Poole Truck. By answering the phone calls and receiving the correspondence, Poole Truck did not purposefully avail itself of the opportunity of doing business in the state from which they emanated. To hold otherwise would offend "traditional notions of fair play and substantial justice." *McGee v. International Life Insurance Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

The cases cited by the plaintiff to support the assertion of jurisdiction are inapposite. All involve contacts far more substantial that the two post-contract visits alleged to have occurred in this case. The defendants in several of those cases had had significant pre-contract contacts with New York. In *Hi-Fashion Wigs, Inc. v. Peter Hammond Advertising, Inc.,* 32 N.Y.2d 583, 347 N.Y.S.2d 47, 300 N.E.2d 421 (1973), the moving third-party defendant executed the contract in New York by physically delivering it there. *See also Dulman v. Potomac Baking Co.,* 85 A.D.2d 676, 445 N.Y.S.2d 509 (2d Dep't 1981) ("The trip to this State on or about October 1 significantly advanced the eventual making of this contract ...").

■ In every cited case in which no precontract meetings or negotiations took

*Flo Systems, Inc. v. Universal Machinery Corp., supra,* 454 F.Supp. at 864.

place in New York, there were significant other New York based activities. For example, in *Wisehart, Friou & Koch v. Hoover,* 473 F.Supp. 945 (S.D.N.Y.1979), the defendants and their agents held numerous meetings in New York (over a dozen in one year) with the plaintiff. Matters critical to the action were discussed at those meetings. Similarly, in *Atlantic Metal Products, Inc. v. Blake Construction Co.,* 40 A.D.2d 966, 338 N.Y.S.2d 714 (1st Dep't 1972), the defendant's representatives attended post-contract conferences in New York and negotiated there to resolve the parties' differences. No comparable contacts occurred here. The court cannot assert jurisdiction over Poole Truck on the basis of CPLR § 302(a)(1).

**B. Walter Poole**

■ The plaintiff does not claim that Walter Poole is doing business in New York. It asserts only that Poole transacted business in New York and that its second claim for relief arises out of that transaction thereby subjecting him to the Court's jurisdiction under CPLR § 302(a)(1). Since Poole Truck's contacts with New York do not subject it to this Court's jurisdiction under that section, Walter Poole's fewer contacts are perforce insufficient in that regard.[9]

**III. *Conclusion***

The defendants' motions to dismiss the claims against them are granted.[10]

The Clerk will enter judgment accordingly.

SO ORDERED.

9. CPLR § 302(a)(3) vests the New York courts with personal jurisdiction over those who commit "a tortious act without the state causing injury to person or property within the state." N.Y.Civ.Prac.Law § 302(a)(3) (McKinney 1972). Had it been asserted, the Court would have rejected CPLR § 302(a)(3) as a basis of jurisdiction over Walter Poole. A commercial "injury," within the meaning of that provision, occurs where the last critical event associated with the dispute took place. *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 94 (2d Cir.1975). Here, the critical event is IU's purchase of Poole Truck. It is that event which plaintiff claims gives rise to Poole Truck's purported contractu-

al obligation to pay a fee, and it is that obligation that Walter Poole purportedly induced Poole Truck to breach. The closing of the stock purchase, and, thus the "injury," occurred at Poole Truck's office in Alabama, not in New York. Affidavit of Walter Poole, Sept. 11, 1984, ¶ 13.

10. The plaintiff did not request that the case be transferred to Alabama in the event that the Court granted the defendants' motions to dismiss for lack of personal jurisdiction. Absent such a request, the Court will not transfer the case.