**ROLLS–ROYCE MOTORS,**
**INC., Plaintiff,**

v.

**CHARLES SCHMITT & CO. and**
**Charles D. Schmitt, Defendants.**

**No. 85 Civ. 5078 (PKL).**

United States District Court,
S.D. New York.

April 3, 1987.

Schnader, Harrison, Segal & Lewis, Donald H. Rivkin, W. Michael Garner, Marjorie L. Cohen, New York City (William P. Kennedy, General Counsel Rolls-Royce Motors, Inc., of counsel), for plaintiff.

Jacob, Medinger & Finnegan, New York City, for defendants.

LEISURE, District Judge:

Plaintiff Rolls-Royce Motors Inc. ("Rolls-Royce"), a Delaware corporation with its headquarters in New Jersey, has brought this action against Charles Schmitt & Co. ("Schmitt Co."), a Missouri corporation, and Charles D. Schmitt ("Schmitt"), a resident of Missouri and president and principal stockholder of Schmitt Co. Schmitt Co., by virtue of a 1984 agreement ("Dealer Agreement") with plaintiff, has been a dealer of new automobiles imported by plaintiff. The contract, which was not executed in New York, provides that Schmitt Co. will "develop the retail sale" of plaintiff's product in St. Louis, Missouri, but does not prevent the defendant from dealing in Rolls-Royce automobiles elsewhere. The Dealer Agreement expressly states that it shall be deemed a New York contract, and shall be interpreted according to New York law.

While Schmitt Co. has been a successful dealer of plaintiff's product, there apparently has been conflict between the parties over the nature of Schmitt Co.'s advertising, alleged misrepresentations by defendants concerning the Rolls-Royce product, alleged false utterances concerning plaintiff's employees, and other alleged breaches of the Dealership Agreement. Despite several meetings between Schmitt and a executive of plaintiff in New York City, these differences were not resolved. Instead, on June 14, 1985, plaintiff terminated Schmitt Co.'s status as a dealer pursuant to a contractual provision providing for such action in the event of an uncured, material breach of the Dealership Agreement by the dealer.

Plaintiff instituted this action seeking: 1) a declaratory judgment that termination of the Dealership Agreement was lawful, to be granted pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; 2) damages for breach of contract; 3) equitable relief in the form of an injunction preventing defendants from uttering statements or engaging in conduct that might

impair both plaintiff's business reputation and the integrity of plaintiff's trademark, and that might threaten the safety of plaintiff's employees and representatives; 4) damages and equitable relief in the form of an injunction preventing defendants from uttering statements or engaging in conduct that might impair plaintiff's business reputation or business pursuant to New York's trade-mark and trade name anti-dilution statute, N.Y.Gen.Bus.Law § 368–d; and 5) treble damages for alleged violations of the Racketeer Influenced and Corrupt Practices Act, 18 U.S.C. § 1961 *et seq.* ("RICO").

Plaintiff alleges that Schmitt Co. breached the Dealership Agreement by impugning the reputation of the Rolls-Royce organization, fellow dealers, and the Rolls-Royce product; by altering automobiles in violation of federal regulations; by altering automobiles and thereby invalidating plaintiff's warranty; by failing to adhere to record-keeping requirements mandated by the Dealership Agreement; by engaging in deceptive advertising; and by conducting its business affairs in a "notorious and outrageous" manner so that plaintiff has been exposed to "ridicule" by virtue of its association with defendants. Plaintiff alleges further that on at least one occasion, while Schmitt was in New York, he uttered disparaging statements over the telephone to plaintiff's employee in Illinois concerning plaintiff and the plaintiff's New York dealer. Schmitt is alleged to have acted similarly, on other occasions, while in St. Louis, Missouri.

The case is now before the Court upon defendants' motion seeking the dismissal of plaintiff's amended complaint due to lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process, pursuant to Fed.R. Civ.P. 12(b)(2)–(5). Alternatively, defendants have moved requesting the transfer of this action to the District Court for the Eastern District of Missouri.

## DISCUSSION

■ In deciding whether to dismiss plaintiff's complaint, this Court is guided by the following principles of jurisdictional analysis. Plaintiff's pleadings are to be construed in the light most favorable to it, *see Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985), and plaintiff must merely make out a *prima facie* case of personal jurisdiction, *see Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 768 (2d Cir.1983), despite contrary allegations by the moving party. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). Given that no evidentiary hearing has been held, plaintiff need not, at this point, prove jurisdiction by a preponderance of the evidence. *See Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir. 1981).[1]

A. *Jurisdiction over the Corporate Defendant*

■ Subject matter jurisdiction over the claims against Schmitt Co. is based on diversity of citizenship, 28 U.S.C. § 1332.[2]

1. Nor have the parties engaged in the type of substantial discovery which would justify holding plaintiff to a higher standard of proof at this stage of the litigation. *See Volkswagenwerk A.G. v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984). In particular, discovery was limited pursuant to a hearing before this Court. The plaintiff eventually must prove jurisdiction, as well as all the elements of its cause of action, by a preponderance of the evidence. *Visual Sciences, supra*, 660 F.2d at 59. However, because the Court believes that defendant's motion can be decided at this point, it is not necessary to hold this decision in abeyance pending additional discovery by the parties. *See* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1351 at 566 (1969).

2. Plaintiff does not allege that Schmitt Co. has violated RICO, barring subject matter jurisdiction over the corporate defendant pursuant to a federal question. While the Amended Complaint is unclear as to whether the RICO claim is asserted against both defendants, *see* Amended Complaint at ¶¶ 12–16, 17–18, it is clear from Plaintiff's Memorandum in Opposition to Defendant's Motions ("P. Memo") that no jurisdictional argument is made regarding Schmitt Co. via RICO. This is proper. Since Schmitt Co. is identified as the "enterprise" under the RICO claim, it cannot also be a party defendant as to that claim. *See Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

Therefore, the issue of personal jurisdiction is determined by the law of the forum state, in this case, New York. *See, e.g., Arrowsmith v. United Press Int'l,* 320 F.2d 219, 223 (2d Cir.1963). New York Civil Practice Law and Rules ("CPLR") §§ 301 and 302 set forth the bases upon which New York courts may assert jurisdiction over a non-resident person or foreign corporation. It is beyond cavil that "New York ... has not chosen to extend its long arm jurisdiction to the limits of constitutional tolerance." *China Express, Inc. v. Volpi & Son Machine Corp.,* 513 N.Y.S.2d 388 (N.Y.Sup.Ct. 1st Dep.1987) (Sullivan, J.).

1. *The Corporate Defendant is not "Doing Business" Pursuant to CPLR § 301*

CPLR § 301 states that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." With respect to a foreign corporation, § 301 preserves the case law existing prior to its enactment, which provided that a corporation is "doing business" and is therefore "present" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917); *accord Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y. S.2d 456, 434 N.E.2d 692 (1982). "A non-domiciliary may be served outside New York, and sued upon any cause of action, if it engages in a continuous and systematic course of doing business in New York." *Hoffritz, supra,* 763 F.2d at 58 (citing *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Liquid Carriers Corp. v. American Marine Corp.,* 375 F.2d 951, 953 (2d Cir.1967)). Whether a corporation may be deemed to be present by virtue of its doing business in the jurisdiction depends upon the application of a "simple and pragmatic" test. *Bryant v. Finnish National Airline,* 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 628–29, 208 N.E.2d 439, 441 (1965). However, the only clear conclusion derivable from these decisions is that a "doing business" determination is unique to each case, requiring consideration of all the facts and circumstances, without relying unduly on any one factor.

As a threshold matter, the Court notes that Schmitt Co. is not incorporated or licensed to do business in New York. "The New York courts, [however,] in applying the pragmatic test for section 301 jurisdiction, have focused upon [additional] factors including: the existence of an office in New York; *the solicitation of business in the state;* the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz, supra,* 763 F.2d at 58 (citations omitted) (emphasis added). New York courts also look at whether defendant lists a telephone number in the state. When considering this criteria, the facts presented by plaintiff fail to establish that Schmitt Co.'s presence in New York is sufficiently continuous and substantial to warrant the exercise of jurisdiction pursuant to § 301.

As previously noted, Schmitt Co. is not licensed to conduct business in the state. Schmitt Co. does not: (1) maintain a local office or bank account in New York [3]; (2) possess property in New York; or (3) have a local telephone number. *See New World Capital v. Poole Truck Line, Inc.,* 612 F.Supp. 166, 171 (S.D.N.Y.1985). Nor does Schmitt Co. have shareholders, possess records or employ individuals in this state.

Plaintiff, unable to rely on these classic factors of § 301 jurisdiction, argues that Schmitt Co. is "doing business" in New York because Schmitt Co. has allegedly solicited business in this state. Plaintiff concedes, as it must, that the long-standing New York rule is that solicitation alone, no

---

**3.** Plaintiff does, however, allege that Schmitt Co. has held itself out as maintaining an office in New York. The Court discusses this claim *infra.*

matter how substantial, will not subject a foreign corporation to the jurisdiction of the New York courts. *See Laufer, supra,* 55 N.Y.2d at 310, 434 N.E.2d at 694, 449 N.Y.S.2d at 459; *Miller v. Surf Properties,* 4 N.Y.2d 475, 480, 151 N.E.2d 874, 876, 176 N.Y.S.2d 318, 321 (1958); *Beacon Enterprises, supra,* 715 F.2d at 763. Nevertheless, plaintiff insists that Schmitt Co. has engaged in a variety of activities amounting to "solicitation plus" in New York.

In *Aquascutum of London, Inc. v. S.S. American Champion,* 426 F.2d 205 (2d Cir.1970), Judge Friendly examined the "solicitation plus" doctrine. The Court of Appeals noted that:

> The New York cases ... on ... "doing business" in New York reveal that while the "solicitation-plus" rule is adhered to, *once solicitation is found in any substantial degree* very little more is necessary to a conclusion of "doing business."

*Id.* at 211 (emphasis added) (citing *Jensen v. United Air Lines Transport Corp.,* 255 App.Div. 611, 8 N.Y.S.2d 374 (1st Dep't 1938), *aff'd mem.,* 281 N.Y. 598, 22 N.E.2d 167 (1939); *Elish v. St. Louis S.W. Ry.,* 305 N.Y. 267, 112 N.E.2d 842 (1953); *Bryant, supra,* 15 N.Y.2d at 426, 260 N.Y.S.2d at 625, 208 N.E.2d at 439). Judge Friendly added that:

> the cases ... which find personal jurisdiction under the "solicitation-plus" rubric have involved either some financial or commercial dealings in New York, or the defendant's holding himself out as operating in New York, either personally or through an agent. In addition, where the activities in addition to solicitation have been particularly skimpy, the courts upholding personal jurisdiction have considered it worthy of comment that the defendant was represented in New York by its own employees rather than by an independent contractor.

*Id.* at 212 (citations omitted).

Plaintiff argues that Schmitt Co.'s activities satisfy the "solicitation plus" rule because:

> (1) [Schmitt Co.] spends millions of dollars purchasing cars in New York; (2) [Schmitt Co.] spends substantial sums on advertising; (3) Schmitt (president of [Schmitt Co.]) visits New York every month; (4) [Schmitt Co.] has representatives in New York; (5) [Schmitt Co.] sells numerous Rolls-Royce cars in New York; (6) [Schmitt Co.] holds itself out as having a New York location; and (7) [Schmitt Co.] has conducted meetings in New York with Rolls-Royce representatives.

P. Memo. at 26. Careful examination of these seven allegations reveals that none is sufficient to satisfy the threshold level of solicitation. The seven factors also fail collectively to amount to Schmitt Co. "doing business" in New York.

Although plaintiff discusses all seven factors, it relies primarily on factors (1) and (3), Schmitt Co.'s purchases of substantial quantities of used luxury automobiles in New York and its president's frequent visits to New York for the purpose of making those purchases. *See* P. Memo at 6–8. It is undisputed that Schmitt has been visiting New York at least once a month for several years primarily to buy used cars, including Rolls-Royce cars. Since 1980, Schmitt Co. has purchased well over 100 new or used Rolls-Royce cars in New York. *Id.* at 9. Plaintiff also claims that in the first seven months of 1985, Schmitt spent "at least 50 days in New York" and spent some $55,000 in New York for food, lodging, and other items. *Id.* at 6–7.

The weakness of plaintiff's position—its reliance on Schmitt Co.'s purchasing activities—is revealed by the distinction made in the case law between *purchases* of goods and services in New York and the *sale* of goods and services in New York. In *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court highlighted the relative unimportance, for jurisdictional purposes, of purchases from and related trips to the forum. In *Helicopteros,* petitioner's chief executive officer visited Texas and conferred with representatives of three joint venturers regarding elements of their contractual arrangements. In addition to the negotiation session in Houston, petitioner purchased helicopters, approxi-

mately 80% of its fleet, spare parts, and accessories for more than $4 million from a company in Forth Worth, Texas. Furthermore, petitioner sent prospective pilots to Fort Worth for training and to ferry helicopters to South America. Also, petitioner's management and maintenance personnel visited Fort Worth for training and consultation. Finally, petitioner received funds drawn from accounts located in Houston. *Id.* at 411, 104 S.Ct. at 1870. "Beyond the foregoing, there [were] no other business contacts between [petitioner] and the State of Texas." *Id.* Upon these facts, the Court held that *"purchases and related trips,* standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Id.* at 417, 104 S.Ct. at 1873 (emphasis added).

■ Even prior to *Helicopteros,* the law in New York was clear that purchases in New York by a foreign defendant corporation of a major share of the merchandise to be sold at its place of business outside the state, even if systematic and made upon visits occurring at regular intervals, do not warrant a finding that the defendant was present within the jurisdiction of New York. *Greenberg v. Lamson Bros.,* 273 A.D. 57, 75 N.Y.S.2d 233, 236 (1st Dep't 1947); *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923). *See also Dero Enterprises v. Georgia Girl Fashions,* 598 F.Supp. 318, 321 (S.D.N.Y.1984); *Meyer v. Gas Magazines, Inc.,* 49 A.D.2d 864, 374 N.Y.S.2d 322 (1st Dep't 1975); *Loria & Weinhaus v. H.R. Kaminsky & Sons,* 495 F.Supp. 253 (S.D.N.Y.1980). Therefore, Schmitt Co.'s purchases of used luxury automobiles in New York and Schmitt's visits to New York in furtherance of these purchases are insufficient to satisfy the threshold element that Schmitt Co. was soliciting business in this state.

■ Plaintiff—presumably aware of the inadequacy of its allegations of mere purchasing activities on the part of Schmitt Co., for the purposes of demonstrating that the corporate defendant was soliciting business in this state—tries to bolster Schmitt Co.'s sales activities in New York by indis-criminately merging them with Schmitt Co.'s purchasing activities. Nevertheless, close study reveals that Schmitt Co.'s sales activities in this District are *de minimis* and do not amount to the solicitation of business in New York.

Plaintiff claims that Schmitt Co. has sold twelve Rolls-Royce cars in New York since November 1984. This assertion is based on plaintiff's misinterpretation of defendants' answers to interrogatories. In an attempt to support its jurisdictional argument, plaintiff has converted, in broad gauge fashion, sales to *customers with New York addresses* into sales *in New York.* Of the twelve alleged sales in New York, seven automobiles were sold to purchasers with New York addresses *who traveled to St. Louis, Missouri* in order to make their purchases. Two of the remaining five cars were sold to New York purchasers by telephone between St. Louis and New York; the purchasers never saw the cars and the transactions were concluded by mail or wire with the shipments of the cars to New York. The remaining three cars were also sold via telephone, mail or wire; furthermore, these cars were delivered to a state *other* than New York. Therefore, these sales can hardly be characterized as sales in New York.

Plaintiff also suggests that Schmitt Co. has sold an equal number of automobiles, other than Rolls-Royces, in New York. Schmitt Co. concedes that it sold eight automobiles to purchasers with New York addresses. Of these sales, however, four were to purchasers who *came to St. Louis* to buy their cars; one was a sale to a New York car dealer, executed via telephone and mail, with the car shipped from Connecticut to New York; one was inspected by the purchaser and delivered to California, again executed by way of mail and telephone communications; one was an agreed repurchase by a New York dealer of a car, which had proven defective, previously purchased by Schmitt Co.; and the final sale involved Schmitt Co.'s purchase of an automobile from a New York dealer and a resale the same day to another New York dealer. The Court holds that only the last

can be fairly characterized as a sale in New York and "that was a wholesale transaction which amounted to less than 2/10 of 1% of [Schmitt Co.'s] sales for the year in question." D. Reply Memo at 4. In sum, it is clear that Schmitt Co.'s sales activities in New York are not sufficient to cross the solicitation threshold for "doing business" in this state.

■ Plaintiff also tries to make much of Schmitt Co's advertising in the *New York Times* and the *Wall Street Journal.* From January 1980 through August 1985, Schmitt Co. advertised virtually every Sunday in the *New York Times* and at least once a week in the *Wall Street Journal.* Almost all of the advertisements bear the legend "Authorized Rolls-Royce Dealer" and offer to sell and purchase new and used Rolls-Royce, Bentley and other cars. P. Memo at 9. Plaintiff claims that the cost of these advertisements to Schmitt Co. amounted to a little less than $3 million dollars. *Id.*

Defendants contend that these advertisements are insufficient, even when conjoined with the other alleged factors, to establish that Schmitt Co. is soliciting or "doing business" in New York. Defendants correctly point out that "[i]t is common knowledge that the *Wall Street Journal* is distributed nationally and that the *New York Times,* although to some extent a New York City newspaper also has national distribution." D. Reply Memo. at 5. Furthermore, Schmitt Co.'s "advertisements in the *Wall Street Journal* and *New York Times* are prepared in St. Louis, Missouri and sent by a telephone copying device to the newspapers in New York." *Id.* Thus, the source of Schmitt Co.'s advertising campaign is St. Louis; it is directed at a *national* audience and only the *publications themselves* are based in New York. Schmitt Co. also notes that a significant portion of its advertising is directed towards promoting its *purchasing* activities in New York. Accordingly, it would be incorrect to conclude that Schmitt Co. is expending substantial resources on advertising directed towards soliciting *sales* in New York. Thus, the Court holds that this advertising does not constitute

substantial solicitation for the purposes of § 301. *See Baird v. Day & Zimmerman, Inc.,* 390 F.Supp. 883, 884 (S.D.N.Y.1974), *aff'd,* 510 F.2d 968 (2d Cir.1975); *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972); *Miller, supra,* 4 N.Y.2d at 475, 176 N.Y.S.2d at 318, 151 N.E.2d at 874.

■ Plaintiff's fourth claim is that Schmitt Co. has maintained representatives in New York, namely Jack Wolf and Herbert Shane, in order to solicit business. Plaintiff alleges that within the last year, Wolf has arranged the sale to Schmitt Co. of 10 to 12 luxury cars and has handled numerous inquiries that failed to conclude in sales. Plaintiff also claims that Wolf and Shane have performed many other activities to assist Schmitt Co. in doing business in New York:

[Wolf and Shane have] inspected and reported upon cars [Schmitt Co.] might purchase in New York; they arranged in certain cases for repairs and had mechanics test-drive certain cars; they handled the allocation of payment for those cars, including payment of liens to secured parties; and they received complaints on new and used cars. They assisted in new car sales in New York by inspecting trade-ins; they kept cars in garages for [Schmitt Co.]; they could arrange for inspection of a car by prospective purchasers; and they assisted with the delivery of new cars.

P. Memo. at 27. Plaintiff also alleges that Schmitt Co. has arranged for "dealer prep" of new cars sold to take place at George Haug Co., an authorized Rolls-Royce New York service facility. Furthermore, Schmitt Co. is alleged to have advertised in the *New York Times* that it has a "New York representative", namely either Wolf or Shane. In addition, Wolf has purportedly stressed to a telephone caller that he was Schmitt Co.'s "exclusive representative" in New York.

As with plaintiff's previous claims, the allegations concerning Wolf and Shane, although imposing at first glance, fail to withstand closer scrutiny. Even a cursory

reading of Wolf's deposition testimony reveals that he did not work "under" Schmitt or Schmitt Co. and he was not Schmitt Co.'s *sales* representative. Wolf stated quite clearly that:

> I was never working for Charles Schmitt, and I was never his representative, and I never got—just for every car I *bought* for [Schmitt] I got a check, and that's all. [Sic]. I never did anything else for [Schmitt] and never was his representative, and I always in my sixty years in business I was always by myself. I was never employed. I mean, I was employed in my own corporation, but I never worked for no one else in my life.
>
> If Charlie Schmitt offered me to be his representative, I would tell him he had to pay me a hundred thousand dollars.

Deposition of Jack Wolf, October 22, 1985 ("Wolf Dep."), 15–16 (emphasis added). Wolf also remarked that:

> I wouldn't last a day if I would be Charles Schmitt's representative.
>
> . . . .
>
> Because I am independent. I *buy* a car, I want to *sell* it to him. I have to work for someone, people tell me to do this and that, that I don't need.

*Id.* at 16 (emphasis added).

Further evidence which contradicts plaintiff's contention that Wolf was an agent or representative of Schmitt Co. is Wolf's testimony that he sold used cars to approximately a hundred car dealers, other than Schmitt Co. Wolf even stated that he "contacted competition of Charles Schmitt, [including authorized Rolls-Royce dealers] like Carriage or what's-his-name—you know, Rallye Motors...." *Id.* Wolf would often contact these dealers competing with Schmitt Co., before he called Schmitt Co. regarding the possible purchase of a used automobile.

Plaintiff's claims regarding Shane are similarly unsupportable. Shane testified that he has dealt with some 30 dealers other than Schmitt Co. over the past few years. Deposition of Herbert Shane, October 22, 1985 ("Shane Dep."), 4. Shane further testified that his "relationship" with Schmitt terminated because he "had called

[Schmitt] so often, and no cars were bought...." *Id.* at 17.

The Court notes that Schmitt Co. lacked the power to control the details of Shane's or Wolf's daily operations. *See, e.g., Delagi, supra,* 29 N.Y.2d at 432, 278 N.E.2d at 897, 328 N.Y.S.2d at 657; *PPS v. Jewelry Sales Representatives, Inc.,* 392 F.Supp. 375, 380 (S.D.N.Y.1975). Furthermore, neither Shane nor Wolf had the power to bind Schmitt Co. contractually. Their activities basically consisted of describing automobiles to Schmitt Co.'s employees in Missouri, where the purchase decisions were made. Wolf stated that Schmitt always made the ultimate decision, based merely on Wolf's description over the phone, whether to purchase the used luxury automobile. Wolf could not make this decision on his own. Wolf Dep. at 24. *See, e.g., Ross v. Colorado Outward Bound School, Inc.,* 603 F.Supp. 306, 309–10 (W.D.N.Y. 1985) (non-domiciliary defendant was not doing business in New York where resident entity unable to do all the business defendant could do were it present in the state).

Moreover, it is clear to the Court that whatever activities Wolf and Shane allegedly engaged in on behalf of Schmitt Co. were restricted almost exclusively to the *purchasing* of used automobiles in New York. Wolf testified that the only fees he received from Schmitt were for cars that Wolf *sold* to Schmitt. Also Wolf also stated that he did not know what Schmitt's or Schmitt Co.'s inventory was nor did he ever negotiate a sale for Schmitt or Schmitt Co. Wolf Dep. at 105. Moreover, Shane stated that he primarily attempted to *sell* used luxury automobiles *to* Schmitt Co. *See generally* Shane Dep. Not only does it appear that Shane's relationship with Schmitt Co. involved merely Schmitt Co.'s purchasing activities, but it also appears that it was not a very fruitful relationship. Shane testified that "I called [Schmitt] in the past, tried to sell him cars. I wasn't too successful." *Id.* at 3. Responding to the question why he was not successful, Shane stated "I don't know. I have got better buyers.... I don't recall whether I

have ever sold him one car prior to this contact that we recently had." *Id.* [4]

Plaintiff also tries to demonstrate that Schmitt Co. held out Wolf and Shane as its representatives in New York and therefore was soliciting business in New York. This claim is primarily grounded upon the advertisements published in the *New York Times* and the *Wall Street Journal*, which sometimes stated that Wolf or Shane were representatives of Schmitt Co. However, examination of these advertisements reveal that all but one pertain to *purchases* by Schmitt Co. of used luxury automobiles.[5] Moreover, the Court notes that even with respect to the advertisements regarding the purchases of used luxury automobiles, no New York address is ever given for Wolf, only his phone number.[6] The only address provided is that of Schmitt Co. in St. Louis Missouri. Therefore, once again, the Court rejects plaintiff's attempt at bootstrapping Schmitt Co.'s substantial purchasing activities in New York into a holding that Schmitt Co. is "doing business" in this state.

■ Plaintiff's sixth contention is that this Court has § 301 jurisdiction over Schmitt Co. because Schmitt Co. has held itself out as having a New York "location" or office. The Court has already disposed of plaintiff's allegations in this regard concerning Wolf and Shane. Plaintiff, however, also relies on Schmitt Co.'s stationary. It is undisputed that since 1971 the words New York and London have been placed in the upper right hand corner of Schmitt Co.'s stationary. Plaintiff's Exhibit 8. The stationary, however, fails to include a specific office address or telephone

number in New York. *See Manchester Modes v. Lilli Ann Corp.*, 306 F.Supp. 622, 625 (S.D.N.Y.1969) (a specific New York address *and* phone number found on defendant's stationary). Plaintiff, in a supplementary submission to the Court also relies on a statement allegedly made by Schmitt to *Ozark* magazine that he has an office in New York. P. Memorandum of Supplementary Authority. This mere statement, however, as reported by a third party, is unpersuasive. *See Manchester Modes, supra*, 306 F.Supp. at 625. Thus, Schmitt Co.'s alleged representations, that it has an office or representatives in New York, are insufficient to establish that it is doing business in New York.[7]

The cases cited by plaintiff in support of its contention that Schmitt Co. is "doing business" in New York under the "solicitation-plus" doctrine are inapposite and in fact demonstrate the precariousness of plaintiff's position. For example, *Aquascutum*—where the Second Circuit affirmed the *dismissal* of a complaint for lack of personal jurisdiction—involved a London-based English corporation offering different types of freight service *to* New York. In *Katz Agency v. Evening News Ass'n*, 514 F.Supp. 423 (S.D.N.Y.1981), *aff'd*, 705 F.2d 20 (2d Cir.1983), also cited by plaintiff, although Judge Cannella did find that defendant television station had been "doing business" in New York pursuant to the "solicitation-plus" doctrine, he relied on the fact that defendant "derived approximately one-third of all its national advertising revenue ... from [sales to] the New York market...." *Id.* at 425. Plaintiff's reliance on *Manchester Modes, supra*, 306 F.Supp. at 622 further undermines its argu-

---

4. The Court notes that plaintiff did not deal in any manner with Wolf or Shane. Therefore, there can be no agency by estoppel because plaintiff had no occasion to rely on Wolf and Shane's supposed agency status. *See, e.g., Dero supra*, 598 F.Supp. at 322. Indeed plaintiff's complaints as to defendants' advertising mentioning these representatives clearly show that plaintiff was never misled as to Wolf and Shane's actual status.

5. The Court, after reviewing the copies of the advertisements, has found only one instance, a July 21, 1985 advertisement for sale of a 1983

Excalibur, where Wolf was advertised as Schmitt Co.'s New York representative for a sale of a car. Plaintiff's Exhibit 5.

6. Shane's name was advertised in lieu of Wolf's for approximately one month in the Spring of 1985 in the same manner as described above.

7. In the interest of completeness, the Court notes that the seventh factor relied upon by plaintiff, the meetings between Schmitt and Rolls-Royce in New York, fall far short of the sort of contact required under § 301. *See Hoffritz, supra*, 763 F.2d at 59.

ment. In *Manchester*, Judge Tenney found that a foreign corporation engaged in the business of manufacturing and selling women's clothing had sufficient activities in New York to be "doing business" in the state; in reaching this decision, Judge Tenney relied on the fact that defendant maintained a showroom in New York, *solicited sales* from this showroom, employed two *full-time* workers—a manager and a model—in the showroom, and featured a *specific* New York address *and* telephone number on its stationary. Plaintiff also relies on *Top Form Mills v. Sociedad Nationale Ind, Etc.*, 428 F.Supp. 1237 (S.D.N.Y. 1977). Again plaintiff's faith is misplaced. In *Top Form*, Judge Gagliardi held that defendant was "doing business" in New York because of the close relationship between defendant and its wholly-owned New York subsidiary. Judge Gagliardi emphasized that defendant and its "New York representative, constitute a tightly-knit commercial organization of commonly-owned entities" *Id.* at 1245; he further stressed that the goods manufactured by defendant were *distributed directly* to New York. *Id.* Finally, *Laufer, supra*, 55 N.Y.2d at 312, 434 N.E.2d at 696, 449 N.Y. S.2d at 456, also fails to support plaintiff's argument because there the Court held that defendant—a corporation, the business of which was limited to the soliciting of orders and servicing of purchasers' accounts—unlike Schmitt Co. in the instant action, was engaged primarily in the *solicitation of sales* in New York.

For the reasons set forth above, the Court finds that plaintiff has failed to establish the threshold element of solicitation of business in New York. Moreover, even assuming plaintiff had satisfied this preliminary element, its alleged "plus" elements fail to support a finding by this Court that Schmitt Co. is "doing business" in New York. Thus, this Court does not have § 301 jurisdiction over Schmitt Co.

### 2. The Corporate Defendant is Transacting Business in New York Pursuant to CPLR § 302(a)(1)

Section 302(a) of the CPLR provides in pertinent part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section; a court may exercise jurisdiction over any nondomiciliary ... who in person or through an agent:

1. Transacts any business within the state.

"Thus, in order for personal jurisdiction over [Schmitt Co.] to lie in New York, [Schmitt Co.] must have transacted business in this state and the cause of action must arise out of such transaction." *Penthouse Films International, Ltd. v. Russell Films, Ltd.*, No. 86–503 (S.D.N.Y. Sept. 2, 1986) (Motley, C.J.) [Available on WEST-LAW, DCT database] (available Mar. 4, 1987 on LEXIS, genfed library, Dist file). *See also Gelfand v. Tanner Motor Tours, Inc.*, 339 F.2d 317 (2d Cir.1964).

The seminal New York case interpreting CPLR § 302 is *Longines-Wittenauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). In *Longines*, the defendant, a Delaware corporation, engaged in:

substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use [in New York] ... of two specially designed machines ...; and the rendition of services over a period of some three months by two of [defendant's] top engineers....

*Id.* at 457, 209 N.E.2d at 75–76, 261 N.Y. S.2d at 19. The New York Court of Appeals sustained jurisdiction on these facts. In doing so, the court refused to determine whether any of the foregoing contacts would, in and of themselves, meet the transacting business test. *Id.* at 458, 209 N.E.2d at 76, 261 N.Y.S.2d at 19.

The test developed in *Longines* is hardly a precise one; the court must look at the aggregation of defendant's activities, coupled with the selective weighing of the various actions. *See* 1 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice*

¶ 302.07, at 3–113 (1986) ("it is impossible to compile a list of factors, which conclusively establish jurisdiction in a given case"). Moreover, it is the "nature and quality, and not the amount of New York contacts [which] must be considered by the court." *Penthouse Films, supra.* Primary factors to consider include the physical presence of defendant in New York, the risk of loss as it affects the New York transaction, and the extent to which the contract is performed in New York.

The aforementioned criteria cannot be imposed mechanically. Each analysis under CPLR § 302 is *sui generis.* The only certainty regarding the jurisdictional standard applicable under CPLR § 302 is that the "showing necessary for a finding that defendant 'transacted business' and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's 'doing business'...." *Hoffritz, supra,* 763 F.2d at 58.

The Second Circuit has stated that in a breach of contract action, "[t]he proper inquiry ... is 'whether looking at the "totality of the defendant's activities within the forum", purposeful acts have been performed in New York by the foreign corporation in relation to the contract, "albeit preliminary or *subsequent* to its execution."'" *Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975) (quoting *Galgay v. Bulletin Co.,* 504 F.2d 1062, 1064 (2d Cir.1974)) (in turn quoting *Longines,* 15 N.Y.2d at 457, 209 N.E.2d at 75, 261 N.Y.S.2d at 18) (emphasis added).

In the instant action Schmitt Co. has had meetings at Schmitt's request with plaintiff's executives regarding performance under the Dealer Agreement. These include a February 5, 1985 meeting at the 21 Club between Schwartz and Schmitt concerning advertising and allocation of cars; a February 28, 1985 meeting at the St. Regis Hotel, when Schwartz and Schmitt discussed allocation of cars; and a June 18, 1985 meeting at which plaintiff requested that Schmitt Co. furnish assurances that it would not violate the Dealer Agreement.

Affidavit of Robert Schwartz, sworn to on November 7, 1985, ¶ 5(c).

While physical presence is not a "talisman which will convert all affairs of business into a New York transaction," it is one of the most concrete manifestations of a non-domiciliary's purposeful activity in New York. N.Y.Civ.Prac.L. & R. § 302(a)(1) practice commentaries C302:9–10 (McKinney 1972). Contrary to defendant's suggestion, the fact that the meeting could have taken place elsewhere, *see* D. Reply Memo. at 10, is jurisdictionally irrelevant. *See Penthouse Films, supra.* What is relevant is that Schmitt, already in New York on a business trip, agreed to participate, and did participate, in three meetings concerning Schmitt Co.'s contractual relations with plaintiff.

In *George Reiner & Co. v. Schwartz,* 41 N.Y.2d 648, 363 N.E.2d 551, 394 N.Y.S.2d 844 (1977), the New York Court of Appeals held that a single visit to New York by defendant "which included interviewing, negotiating and contracting—[resulting in] the purposeful creation of a continuing relationship with a New York corporation," was enough to sustain jurisdiction under § 302(a). *Id.* at 653, 363 N.E.2d at 554, 394 N.Y.S.2d at 848.

In a more recent case, *Penthouse Films, supra,* Judge Motley held that a series of meetings in New York between film director Ken Russell and Robert Guccione, president of plaintiff corporation, constituted transacting business in New York. As in the instant action, the meetings in *Penthouse Films* occurred subsequent to the execution of the contract between the parties. Moreover, as in this case, defendant in *Penthouse Films* argued that the business discussed at these meetings could have been discussed in any location, or in fact could have performed on the phone or through correspondence. Judge Motley held that neither of these two factors affected the decision regarding whether business had been transacted by defendant in New York.

In addition to the meetings in New York between Schmitt Co.'s president and plaintiff's executives, plaintiff specifically alleg-

es that Schmitt Co. has breached the dealership agreement with respect to false advertising in the New York media. Amended Complaint at 8; P. Memo. at 17–18. Additionally, plaintiff alleges a breach of paragraph 5 of the Dealership Agreement, which requires Schmitt Co. to furnish to plaintiff:

a report at 14–day intervals as specified by [plaintiff] from time to time, showing new and used Rolls-Royce and Bentley motor cars held in stock by Dealer at the commencement of each interval, cars received during such interval, cars delivered to customers....

Dealer Agreement ¶ 5. It is evident that such a report would include cars *bought* and sold on the New York market.

In construing CPLR § 302(a)(1), the New York Court of Appeals has said the New York transaction must "bear a substantial relationship to the transaction out of which the instant cause of action arose." *McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981); *see also Beacon Enterprises, supra*, 715 F.2d at 764. The courts look at whether defendant was "engaged in some purposeful activity in this State in connection with the matter in suit," in light of the "*totality* of the defendant's activities within the forum." *See Longines*, 15 N.Y.2d at 457 & n. 5, 209 N.E.2d at 75 & n. 5, 261 N.Y.S.2d at 18 & n. 5 (emphasis supplied); *see also Hoffritz, supra*, 763 F.2d at 60 ("viewing the totality of the circumstances surrounding defendant's activities in New York in connection with the matter giving rise to the lawsuit"). The "plaintiffs need only show that the cause of action is *sufficiently related* to the business transacted that it would not be unfair to deem it to arise out of the transacted business...." *Id.* at 59 (emphasis supplied).

Under this standard it is clear that plaintiff's action arises from Schmitt Co.'s transaction of business in New York. These were direct meetings between plaintiff's executives and Schmitt Co.'s president for the purpose of discussing matters central to the litigation, most notably, defendant's alleged lack of performance un-

der the Dealership Agreement. This, of course, is the issue, without which, there would be no lawsuit. *See* Schwartz Aff. at ¶ 5. *Cf. New World Capital Corp., supra*, 612 F.Supp. at 173 (post-contract visit would sustain jurisdiction if related to plaintiff's cause of action).

In addition to meetings in New York, courts may look to other factors such as advertising activities, *Murray v. Plessey, Inc.*, 40 A.D.2d 811, 338 N.Y.S.2d 311 (1st Dep't 1972), and letterheads showing a New York location *Scruggs v. International Investments, Ltd.*, 74 Misc.2d 250, 342 N.Y.S.2d 270 (1973). While in the instant action, it is unlikely that any one of these factors would afford jurisdiction, when added to Schmitt Co.'s meetings in New York they further tip the balance in favor of a finding that the long-arm statute in satisfied. *See* J. Weinstein, *supra*, p. 6, ¶ 302.11.

In sum, the Court finds that the corporate defendant's meetings with plaintiff in the forum, its additional physical presence in the forum, and its other activities in New York are sufficient to subject Schmitt Co. to personal jurisdiction in New York under CPLR § 302(a)(1).

3. *The Corporate Defendant has not Committed an In-State Tort Pursuant to CPLR § 302(a)(2)*

CPLR Section 302(a)(2) provides for personal jurisdiction over a defendant when a defendant "commits a tortious act within the state" of New York. *See Business Trends Analysts v. The Freedonia Group Inc.*, 650 F.Supp. 1452, 1455 (S.D.N.Y. January 5, 1987) (Weinfeld, J.). This provision excludes defamation actions from its scope. Section 302(a)(2) also requires that there be a nexus between the cause of action and the acts of the defendant that form the basis for personal jurisdiction. *Id.*

In *Feathers v. McLucas*, 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1965), the New York Court of Appeals narrowly defined the term "in-state" tort. The court distinguished between the place of the commission of the tort and the place of the resulting injury. Section 302(a)(2) requires

that the tort be committed in New York, regardless of where the harm is suffered. *See Id.* at 463, 209 N.E.2d at 79, 261 N.Y. S.2d at 23. Pursuant to this interpretation of the statutory language, the defendant must actually be in New York when the tort is committed. *See Bialek v. Racal-Milgo, Inc.*, 545 F.Supp. 25, 35 (S.D.N.Y. 1982); *MIJE Assocs. v. Halliburton Servs.*, 552 F.Supp. 418, 420 (S.D.N.Y.1982); *see also Dogan v. Harbert Construction Corp.*, 507 F.Supp. 254, 262 (S.D.N.Y.1980) (misrepresentations made to New York by telephone are not "in-state").

Plaintiff's argument that it has established jurisdiction over the corporate defendant under CPLR § 302(a)(2) is four-fold: (1) Schmitt has allegedly made false statements concerning plaintiff's New York Dealer; (2) Schmitt purportedly disparaged plaintiff's New York dealer; (3) Schmitt allegedly made certain misrepresentations concerning features of plaintiff's cars in the New York newspapers; and (4) Schmitt Co. purportedly injured plaintiff's reputation under the New York anti-dilution statute.

■ With respect to plaintiff's claim of making false statements regarding plaintiff's New York dealer, the Court has carefully examined the affidavits provided by plaintiff and must conclude that they form an inadequate basis upon which to maintain jurisdiction over Schmitt Co. pursuant to § 302(a)(2). In his affidavit, sworn to on November 5, 1985, David Carmichael recounts a phone call made by Schmitt in New York to Carmichael. *Id.* at ¶ 3(d). According to Carmichael, Schmitt demanded to know why plaintiff's New York dealer was receiving cars and Schmitt Co. was not; Schmitt then allegedly threatened an employee of plaintiff and slandered plaintiff's cars and additional employees. In his affidavit, sworn to on November 7, 1985, W. Michael Garner, Esq. merely states that plaintiff *"may* call ... witnesses to a June 1985, incident in the Bronx in which Schmitt is said to have threatened the life

of a New York Rolls-Royce dealer ... and may ... call [another witness] with respect to a 1985 incident in which ... Schmitt *reportedly* caused a disturbance by parking a Rolls-Royce ... in front of the St. Regis Hotel [in New York]." [8] *Id.* at ¶ 5 (emphasis added). With the exception of the isolated allegation of slander, which is outside the ambit of § 302(a)(2), there is no support for plaintiff's conclusory allegation that Schmitt made false statements regarding the New York dealer.

The contention that Schmitt Co. disparaged the New York dealer while acting in New York is no more effective. Plaintiff cites no evidence before the Court in support of this argument other than Schwartz's vague allegation that Schmitt disparaged the New York dealer "in the vilest terms." Schwartz Aff. at ¶ 7. And even this statement pertains to a phone conversation between Schmitt and Schwartz which took place when Schmitt was in St. Louis. *Id.* "Additionally, if the claimed misrepresentation or disparagement of the New York dealer is said to be fraudulent, it must be pleaded specifically under Rule 9(b), Federal Rules of Civil Procedure, which it is not. And if, on the other hand, it is claimed to be defamatory, it is specifically excluded as a basis for long arm jurisdiction under CPLR 301(a)(2)...." D. Reply Memo. at 34.

With respect to plaintiff's argument that Schmitt Co. has made misrepresentations concerning features of Rolls-Royce cars, the gravamen of plaintiff's claim seems to be breach of the Dealership Agreement. Of course, breach of contract, without more, is not tortious. *See Amigo Foods Corp. v. Marine Midland Bank-New York,* 39 N.Y.2d 391, 396, 348 N.E.2d 581, 584, 384 N.Y.S.2d 124, 127 (1976). Therefore, to the extent that these alleged misrepresentations constitute a mere breach of the Dealership Agreement, they cannot form the basis of § 302(a)(2) jurisdiction. The Court also refers the parties to its earlier discussions concerning the national distribution of the *New York Times* and *Wall*

---

**8.** Plaintiff also cites Schwartz Aff. at ¶ 10 in support of its argument with respect to this issue. The Court has reviewed that paragraph of the document and does not perceive its relevance to the question of whether Schmitt has committed torts in New York.

*Street Journal.* Moreover, as the Court has already stated, these advertisements are really part of Schmitt Co.'s sales activities in St. Louis, Missouri.

 Plaintiff's last argument in support of this Court's jurisdiction over Schmitt Co. pursuant to § 302(a)(2) is that the corporate defendant has injured plaintiff's reputation in New York under New York's anti-dilution statute, N.Y.Gen. Bus.Law § 368–d. The statute is "designed to protect the distinctiveness of an owner's trademark from being undercut by another's similar use." *Dreyfus Fund v. Royal Bank of Canada,* 525 F.Supp. 1108, 1125 (S.D.N.Y.1981) (citations omitted). In other words, the statute seeks to prevent "palming off" or "passing off" and unfair competition and dilution of trademarks based on "palming off" or "passing off" one party's product as that of another. *See, e.g., Warner Bros. v. American Broadcasting Companies, Inc.,* 720 F.2d 231, 247 (2d Cir.1983); *Sally Gee, Inc v. Myra Hogan, Inc.,* 699 F.2d 621, 624–26 (2d Cir.1983). Therefore, the "gravamen of a dilution complaint is that the continuing use of a mark similar to plaintiff's will inexorably have an adverse effect upon the value of plaintiff's mark and that, if plaintiff is not protected, its mark will eventually be deprived of its distinctiveness." *King Research v. Shulton, Inc.,* 324 F.Supp. 631, 639 (S.D.N.Y.1971); *see also Stop the Olympic Prison v. U.S. Olympic Com.,* 489 F.Supp. 1112, 1123 (S.D.N.Y. 1980). Again, to the extent that plaintiff is alleging that Schmitt Co.'s advertisements are weakening plaintiff's mark, it appears that the heart of plaintiff's claim is breach of the Dealership Agreement. Moreover, with respect to this claim, plaintiff's papers merely allege injury in conclusory fashion. For the aforementioned reasons, the Court cannot retain jurisdiction over plaintiff's putative tort claims under § 302(a)(2). The Court, therefore, looks to § 302(a)(3).

### 4. *The Corporate Defendant has not Committed Tortious Acts Pursuant to CPLR § 302(a)(3)*

In relevant part, CPLR § 302(a)(3) grants courts in New York personal jurisdiction as follows:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... commits a tortious act without the state ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

It is clear that Schmitt Co. has transacted business in New York. Nevertheless, there are two deficiencies in plaintiff's claim that jurisdiction is proper over plaintiff's tort claims pursuant to § 302(a)(3). First, it is not obvious to the Court that plaintiff has suffered any injury in New York. Second, it is unclear whether defendant has committed an out-of-state tort within the ambit of this provision.

It is well settled that a "commercial tort may be a 'tortious act' within the meaning of [§] 302(a)(3)." *Cantor v. Life Alert, Inc.,* 655 F.Supp. 673, 678 (S.D.N.Y.1987) (Motley, J.), and there is no difficulty in asserting jurisdiction under this provision in cases of commercial injury. *See Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 385 N.E.2d 1055, 413 N.Y.S.2d 127 (1978). In such a case, the place of injury will usually be located where the "critical events associated with the dispute took place." *Chemical Bank v. World Hockey Ass'n,* 403 F.Supp. 1374, 1380 (S.D.N.Y.1975) (citation omitted) (quoting *Spectacular Promotions v. Radio Station WING,* 272 F.Supp. 734, 737 (E.D. N.Y.1967)). Moreover, to show an injury in New York, in commercial disputes, plaintiff traditionally must show direct interference with its New York customers or business. *See Sybron, supra,* 46 N.Y.2d at 205, 385 N.E.2d at 1058, 413 N.Y.S.2d at 131; *American White Cross Laboratories v. H.M. Cote, Inc.,* 556 F.Supp. 753, 759 (S.D. N.Y.1983).

Plaintiff contends that Schmitt Co. has committed tortious acts outside of New York causing plaintiff injury within New York. Plaintiff states that:

[Schmitt Co.'s] tortious acts have taken place in Missouri.... [Schmitt Co.'s] tor-

tious acts consist of a systematic campaign of harassment and disparagement of [plaintiff's] products, officers, employees and dealers. In particular, [Schmitt Co.] has attempted to discredit the [plaintiff's] dealer in New York. [Schmitt Co.] has also misrepresented features on certain Rolls-Royce cars, which [Schmitt Co.] has advertised in New York newspapers.

D. Memo. at 35 (citations omitted).

In *Aaacon Auto Transport v. Barnes*, 603 F.Supp. 1347 (S.D.N.Y.1985), Judge Weinfeld held that he lacked jurisdiction over defendant where plaintiff merely alleged that it suffered a financial loss and was domiciled in New York. *Id.* at 1350. In the instant action, plaintiff's claim of New York injury is even more tenuous. Plaintiff is domiciled in New Jersey, not in New York. Moreover, plaintiff has failed to specifically allege any commercial harm or loss of profit in New York. *See Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326–27, 402 N.E.2d 122, 126, 425 N.Y.S.2d 783, 787 (1980); *Trafalgar Capital Corp. v. Oil Producers Equip. Corp.*, 555 F.Supp. 305, 312–13 (S.D.N.Y. 1983).

With respect to plaintiff's claims that Schmitt Co. engaged in tortious conduct outside of New York which affected plaintiff, many of the issues discussed previously with reference to § 302(a)(2) jurisdiction are again relevant. The Court declines to review these earlier points in detail. However, the Court notes that § 302(a)(3), like § 302(a)(2), specifically excludes jurisdiction over defamation actions. In the instant action, what plaintiff seeks to characterize as harassment, is actually a reference to allegedly slanderous statements made by Schmitt. Furthermore, plaintiff's tort claim stems from its breach of contract

claim and is not tortious in nature.[9] *See Fantis Foods, supra*, 49 N.Y.2d at 324, 402 N.E.2d at 124, 425 N.Y.S.2d at 785. Therefore, plaintiff's reliance on § 302(a)(3) is misplaced. For the aforementioned reasons, the Court lacks jurisdiction over plaintiff's tort claims, thus, they are dismissed.

**B.** *Jurisdiction Exists Over the Individual Defendant Pursuant to RICO*

Plaintiff has alleged violations by defendant Schmitt of RICO, 18 U.S.C. § 1961 *et seq.* Subject matter jurisdiction as to Schmitt is thus properly based on a federal question, 28 U.S.C. § 1331. *See generally West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 (2d Cir.1987). Given the federal question, federal, not state, law must provide the standard for evaluating personal jurisdiction.

"RICO contains specific provisions authorizing nationwide service of process." *Soltex Polymer Corp. v. Fortex Industries*, 590 F.Supp. 1453, 1458 (E.D.N.Y. 1984) (citing 18 U.S.C. § 1965(d)). "Moreover, '[w]here such nationwide service of process is authorized, a federal district court's jurisdiction is "coextensive with the boundaries of the United States, [and] due process requires only that a defendant in a federal suit have minimum contacts with the United States." '" *Soltex, supra*, 590 F.Supp. at 1458 (quoting *Clement v. Pehar*, 575 F.Supp. 436, 438 (N.D.Ga.1983)) (in turn quoting *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir.1981)); *see also Hirt v. UM Leasing Corp.*, 614 F.Supp. 1066, 1069 (D.Neb.1985); *Mariash v. Morrill*, 496 F.2d 1138, 1143 (2d Cir.1974); *Merrill, Lynch, Pierce, Fenner, & Smith, Inc. v. Rajcher*, 609 F.Supp. 291, 293 (S.D.N.Y. 1985); *Como v. Commerce Oil Co.*, 607 F.Supp. 335, 341 (S.D.N.Y.1985).[10] Clearly,

---

**9.** This is not a case analogous to *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir.1981) where the Second Circuit held that defendant's contract breach also constituted the independent tort of fraudulent misrepresentation. The Circuit Court in *Hargrave* found jurisdiction pursuant to § 302(a)(3). *Id.* at 900. In this case, there is no allegation defendant made misrepresentations, intending that *plaintiff* rely on them,

or indeed, that the plaintiff did in fact rely on any such statements. *See MIJE Assocs., supra*, 552 F.Supp. at 420 n. 5.

**10.** Defendants, citing no case law, claim that nationwide service of process is only authorized under RICO if a judicial determination is made that the "ends of justice" so require. D. Reply Memo at 40. Defendants have misconstrued the statute, by confusing personal jurisdiction with

Schmitt, a resident of Missouri, is subject to jurisdiction under this standard.

■ Plaintiff's additional claims against defendant Schmitt are subject to this Court's jurisdiction pursuant to the doctrine of "pendent jurisdiction." Where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a "common nucleus of operative fact," *Gibbs v. United Mine Workers*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), courts have been willing to assert jurisdiction over the related state law claims in the interest of judicial economy. *See Hargrave, supra,* 646 F.2d at 720.

In the instant case, Schmitt and Schmitt Co.'s allegedly false statements concerning plaintiff's product, which were contained in its advertising, form the basis for the RICO claim. Obviously, they are also integral to plaintiff's non-RICO claims for breach of contract. Pendent jurisdiction allows this Court to hear all related claims,[11] both federal and state, to serve the interest of the "federal judiciary ... in having the whole case tried at one time." *Hargrave, supra,* 646 F.2d at 720. *See generally,* Note, *Removing The Cloak of Personal Jurisdiction From Choice of Law Analysis: Pendent Jurisdiction & Nationwide Service of Process,* 51 Fordham L.Rev. 127, 127–29 (1982).

C. *Venue is Proper Pursuant to 28 U.S.C. § 1391*

While personal jurisdiction over defendant Schmitt Co. was determined according to state law, venue is a question of federal law. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979). As the Court stated earlier, jurisdiction in the present action is predicated upon federal question, as well as diversity grounds. Therefore, the general venue provision applicable here is 28 U.S.C. § 1391(b), which reads as follows:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where *all defendants reside, or in which the claim arose,* except as otherwise provided by law.

(Emphasis added).

Schmitt Co. is a corporation; thus determination of venue under § 1391(b) begins with § 1391(c), which states:

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the *residence of such corporation for venue purposes.*

(Emphasis added).

"The precise quantum of activity needed to satisfy the 'doing business' requirement of § 1391(c) is unclear." *Oral-B Laboratories,* 611 F.Supp. 460, 462 (D.C.N.Y.1985) (citing *Johnson Creative Arts v. Wool Masters,* 743 F.2d 947 (1st Cir.1984)). "Courts in New York[, however] have held that venue is proper only when the contacts are sufficient to satisfy CPLR § 301, not CPLR § 302." *Oral-B Laboratories, supra,* 611 F.Supp. at 462 (citing *Sterling Television Presentations v. Shintron Co.,* 454 F.Supp. 183 (S.D.N.Y.1978)); *see also Honda Associates v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 890 (S.D.N.Y.1974). Here, the Court has already found that it lacks jurisdiction over Schmitt Co. pursuant

---

venue. The language upon which defendants rely is found in § 1965(b). This subsection comes into play if a court determines that venue is proper as to one or more defendants in a RICO case pursuant to § 1965(a), but not as to other defendant(s). In that case, a court can assert venue as to the remaining defendant(s) if "justice so requires." *See Soltex, supra,* 590 F.Supp. at 1459 (E.D.N.Y.1984); *Miller Brewing Co. v. Landau,* 616 F.Supp. 1285, 1290 (D.Wis. 1985). At this juncture, this Court is limiting its inquiry to a determination of whether personal jurisdiction is proper.

11. If the federal claim is dismissed at any point, then the Court loses jurisdiction over the pendent state law claims. *See Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. The Court does not, however, reach the question as to whether there is an independent basis for personal jurisdiction over defendant Schmitt based on diversity of citizenship and CPLR §§ 301 or 302 with regard to the state law claims.

to § 301. Therefore, Schmitt Co. is not a resident of this District, under § 1391(c). *Honda, supra,* 374 F.Supp. at 890.[12]

Since Schmitt Co. does not "reside", for the purposes of § 1391, in this district, venue may be found here under the general statute only if the "claim arose" in this district. "Determining where a claim arises for the purpose of 28 U.S.C. § 1391(b) frequently proves to be a vexing and uncertain process." *Jaffe v. Boyles,* 616 F.Supp. 1371, 1376 (W.D.N.Y.1985). The instant case is no exception.

"The determination of where a claim arises is a federal question to be answered by federal law." *Id.* (citation omitted). Some courts have suggested that the statute envisions every claim arising in only one district. *But see* Discussion in J. Moore Federal Practice ¶ 0.142 [5.–2], p. 1431 (1974). However, in *Leroy, supra,* the Supreme Court declined to decide whether § 1391(b) "adopts the occasionally fictive assumption that a claim may arise in only one district." 443 U.S. at 184–85, 99 S.Ct. at 2716–17. The Court noted, however, that Congress did not intend to give plaintiffs "unfettered choice" among several districts and provided factors for determining where venue is proper when it is unclear whether the claim arose in only one particular district. *Id.* The Court stated that:

> In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* at 185, 99 S.Ct. at 2717 (citation and footnote omitted) (emphasis in original).

"The federal courts have developed different standards for determining where a claim arose for purposes of venue; the most widely accepted is the 'weight of the contacts' test...." *Lieb v. American Pac. Intern., Inc.,* 489 F.Supp. 690, 695 (E.D.Pa. 1980) (citation omitted). *See also Bastille Properties, Inc. Hometels of America, Inc.,* 476 F.Supp. 175, 178–79 (S.D.N.Y. 1979); *Ghazoul v. International Management Services, Inc.,* 398 F.Supp. 307, 315 (S.D.N.Y.1975); *Moyglare Stud Farm, Ltd. v. Due Process Stable, Inc.,* 562 F.Supp. 289 (S.D.N.Y.1983). According to this approach, "[s]ection 1931(b) does not support a right to bring suit where *any part of the claim, however, small arose."* *Moyglare Stud Farm, supra,* 562 F.Supp. at 291 (emphasis added) (citing *Honda, supra,* 374 F.Supp. at 892). Rather, "in determining the proper district for purposes of venue, the Court will examine the weight of the defendant's contacts regarding the claim in the various districts concerned." *Moyglare Stud Farm, supra,* 562 F.Supp. at 291 (citing *Coface v. Optique Du Monde, Ltd.,* 521 F.Supp. 500, 505 (S.D.N.Y. 1980)).

■ In this action, plaintiff's claims, *inter alia,* seek declaratory relief and damages for Schmitt Co.'s alleged breach of the Dealer Agreement. Defendants argue that plaintiff's claims against Schmitt Co. arose in either Missouri or New Jersey rather than in New York because the contract in question was signed by Schmitt Co.'s president in St. Louis, Missouri, and mailed by him for signature to plaintiff in Lyndhurst, New Jersey. Moreover, defendants note that neither plaintiff nor the corporate defendant are New York corporations. Finally defendants contend that the contract calls for maintenance of a dealer place of business in St. Louis only and that Schmitt Co. primarily performed this contract in Missouri. On the other hand, plaintiff points out that Schmitt Co.'s president's refusal to assure plaintiff, during *a meeting in New York* held on June 18, 1985, that Schmitt Co. would not breach further the Dealer Agreement directly precipitated this action. Plaintiff also argues that the Dealer Agreement states that it "shall at all times be deemed a New York

---

**12.** Moreover, the Court notes that it is undisputed that Schmitt is a resident of Missouri.

contract, and all questions as to its interpretation and enforcement shall be be governed by the laws of that state." Dealer Agreement, ¶ 20. Finally, as the Court's previous discussion under CPLR § 302 indicates, plaintiff's claims arise from Schmitt Co.'s transacting of business in New York.

"Clearly, this is not a case in which the contacts between the claim and this district are insignificant or miniscule. Rather, the actions taken by [Schmitt Co.] here go to the heart of [plaintiff's] claim concerning the [breach], and accordingly the Court finds venue to be proper [with respect to the claims] in this district." *Moyglare Stud Farm, supra,* 562 F.Supp. at 292. The Court especially relies on the fact that Schmitt Co. negotiated with plaintiff that the Dealer Agreement is a New York contract and that New York law should govern the Agreement. Under the principles of *Leroy, supra,* 434 U.S. at 186, the fact that New York law is to be applied weighs heavily in favor of finding venue in this district. In *Leroy,* the Supreme Court emphasized that "federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law" and therefore, venue lies more properly in Idaho. *Id.; see also Moyglare Stud Farm, supra,* 562 F.Supp. at 292 ("choice of law clause deserves significant weight in determining where a claim arose"). Accordingly, for all the aforementioned reasons the Court finds venue with respect to claims against Schmitt Co. to be proper in this district pursuant to § 1391(b).

D. *Venue Is Proper as to the Individual Defendant Pursuant to 18 U.S.C. § 1965(a)*

Defendant Schmitt also moves to dismiss plaintiff's RICO claim as to him on the grounds of improper venue. Plaintiff contends that venue is proper under RICO's venue provision. 18 U.S.C. § 1965(a).[13]

The RICO statute's venue provision can be read as supplementing the general venue statute. *See Van Schaick v. Church of Scientology, Inc.,* 535 F.Supp. 1125, 1133 n. 6 (D.Mass.1982). Section 1965(a) provides that a civil RICO claim may be brought against any person in "any district in which such person resides, is found, has an agent, or transacts his affairs."

There is no allegation that Schmitt, the individual defendant, resides in the Southern District of New York. In this case, however, there are enough facts from which Schmitt can be said to be transacting business in the Southern District. The term transaction of business means regularly conducting business of a substantial and continuous character within that district. *Hodgdon v. Needham-Skyles Oil Co.,* 556 F.Supp. 75, 78 (D.D.C.1982). Schmitt's frequent purchases in this District, on behalf of his corporation, coupled with travel to New York on at least a monthly basis, amount to transacting business for the purposes of § 1965(a). *Cf. Follett College Stores Corp. v. Fernandez,* 587 F.Supp. 1051, 1052–53 (N.D.Ill.1984) (telephone and mail communication with the district alone insufficient to sustain venue under § 1965(a)). Moreover, Schmitt has visited the Southern District to manage his corporation's relationship with plaintiff. Specifically, Schmitt has met in this District with an officer of plaintiff, in order to discuss Schmitt Co.'s performance under the dealership agreement.

In *Bulk Oil (USA) Inc. v. Sun Oil Trading Co.,* 584 F.Supp. 36 (S.D.N.Y.1983),

---

**13.** 18 U.S.C. § 1965(b) provides an alternative venue provision. The Court can cause a party to be summoned before it where the "ends of justice" so require. Plaintiff has not attempted to make such a showing here. In any case, use of § 1965(b) is predicated on the presence of at least one other defendant being properly before the Court. Without Schmitt, as to who venue is challenged, there would be no defendant properly venued pursuant to § 1965(a). *See Soltex,* 590 F.Supp. at 1459. Moreover, the fact that

both the corporate and individual defendant can be sued in another district, *e.g.,* the Eastern District of Missouri, suggests that the "ends of justice" may not require an order by the Court under § 1965(b). *But see Miller Brewing, supra,* 616 F.Supp. at 1290 (finding "ends of justice" require venue under § 1965(b) *even though* venue would be proper as to all defendants in another district, due to extraordinary delay that would ensue).

Judge Stewart held that the RICO venue provision requires a showing that the individual defendant transacted affairs on *his own behalf, not merely on behalf of the corporation,* in order to sustain venue under the relevant provision. *Id.* at 39–40. The Court first stated that the express language of the RICO venue provision suggests this result. *Id.* at 39. More important to Judge Stewart's decision, however, was his comparison of the "transacts his affairs" language of section 1965(a) to the "transacts business" language of section 12 of the Clayton Act, 15 U.S.C. § 22. *Id.* (citing *King v. Vesco,* 342 F.Supp. 120, 123 (N.D.Cal.1972)). The Court reasoned that because "section 12 of the Clayton Act concerns the 'District in which to sue corporation', it does not yield any authority precisely on point with respect to the question of whether the corporation's affairs may be imputed to an individual for venue purposes." *Id.* (quoting 15 U.S.C. § 22). Nevertheless, Judge Stewart took the next step by noting that "it has been held that 'the test for transacting business for venue purposes under the anti-trust laws is co-extensive with the test for jurisdiction under New York CPLR § 302.'" *Id.* at 39–40 (quoting *Agra Chemical Distributing Co., Inc. v. Marion Laboratories, Inc.,* 523 F.Supp. 699, 702 (W.D.N.Y.1981)). From there, Judge Stewart applied the "fiduciary shield doctrine"—which has been held to be applicable to § 302 by courts of this Circuit and New York. According to this doctrine, "if an individual has contacts with the state only by virtue of his acts as a fiduciary of a corporation, he may be personally shielded from the exercise of jurisdiction in that state on the basis of that conduct." *Bulk Oil, supra,* 584 F.Supp. at 40 (citing *Marine Midland, supra,* 664 F.2d 902). Therefore, the Court concluded that "since the corporation's business would not be imputable to the [individual] defendants under the long arm statute, it would not under the Clayton Act, and thus not under RICO...." *Bulk Oil, supra,* 584 F.Supp. at 40.

In *Soltex, supra,* Judge McLaughlin reached the opposite conclusion. 590 F.Supp. at 1453; he held that the fiduciary shield doctrine does not circumscribe the breadth of a federal court's jurisdiction in a RICO case. Judge McLaughlin posed the question as a choice between interpreting the doctrine as "merely a judicial construction of the New York long-arm statute" or "a constitutional principle of due process" which "must be respected even in a purely federal case." *Id.* at 1458. Following the Second Circuit's statement in *Marine Midland, supra,* that "[t]he fiduciary shield doctrine is not a constitutional principle, but is rather a doctrine based on judicial inference as to the intended scope of the [New York] long-arm statute ...", 664 F.2d 902 (citation omitted), Judge McLaughlin held that the "fiduciary shield doctrine is inapplicable in a RICO case where plaintiff does not resort to New York's long-arm statute to establish a jurisdictional predicate [against the individual defendant]." *Soltex, supra,* 590 F.Supp. at 1458.

Judge McLaughlin's view is entirely consistent with recent decisions of the Supreme Court, which held that the fiduciary shield doctrine is not grounded in the due process clauses of the first and fourteenth amendments. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *see also Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 569 n. 30 (S.D.N.Y.1985). In the instant action the holding of *Soltex* is especially appropriate because the fact that Schmitt is the president and principal shareholder of Schmitt Co., vitiates the viability of the distinction between corporate and individual affairs. *See Miller Brewing, supra,* 616 F.Supp. at 1289 ("defendants enjoyed positions within the business they operated such that the affairs of the business were, in reality, their own affairs").

### E. Transfer Under § 1404(a) Is Denied

 Defendants, alternatively, have moved seeking transfer of this action to the District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For

the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court finds that a transfer is not convenient for the parties and witnesses and is not in the interest of justice.

In deciding a motion to transfer pursuant to 28 U.S.C. § 1404(a), the essential inquiry, as was true under its common-law predecessor of *forum non conveniens, see Manu International, S.A. v. Avon Products,* 641 F.2d 62, 65 (2d Cir.1981), concerns the relative convenience and efficiency in trying the case in one forum as opposed to another. *See Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (Weinfeld, J.). This determination depends upon a weighing of many different factors. "These factors include not only convenience to the parties and the witnesses but also the 'relative ease of access to proof, availability of witnesses ... and "all other practical problems which make trial of a case easy, expeditious, and inexpensive." ' " *Heyco, Inc. v. Heyman,* 636 F.Supp. 1545, 1548 (S.D.N.Y.1986) (quoting *Hall v. E.I. Dupont, De Nemours & Co.,* 345 F.Supp. 353, 385 (E.D.N.Y.1972)) (in turn quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

The party seeking the transfer bears the burden of making a clear cut showing that the transfer is warranted. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Heyco, supra,* 636 F.Supp. at 1549. The moving party must specify clearly which evidence and witnesses it intends to rely on in the transferee district, *see Vassallo v. Niedermeyer,* 495 F.Supp. 757, 760 (S.D.N.Y.1980), and show that the balance of con-

venience weighs heavily in its favor, *see Y⁴ Design, Ltd. v. Regensteiner Publishing Enterprises,* 428 F.Supp. 1067, 1068–69 (S.D.N.Y.1977), for transfer is inappropriate when it merely serves to shift inconveniences from one party to the other. *See Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964).

As a threshold matter, the Court must consider the fact that two months after plaintiff brought this action, defendants filed an action in the District Court for the Eastern District of Missouri. In that action, which is still pending, defendants seek relief for plaintiff's alleged antitrust violations.

The rule in this Circuit is, absent special circumstances, the first filed suit should have priority.[14] *See Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974); *William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969). Defendant has failed to demonstrate that any special circumstances exist. The only special circumstance which even arguably has any relevance here is possible forum shopping by the plaintiff. However, this Court finds that this is not a case of impermissible forum shopping by the plaintiff. Plaintiff has not chosen a forum devoid of contacts between either itself or defendant. As the Court has already held, defendants and plaintiff transact business in New York. Moreover, there is no substantive advantage to plaintiff in having this action decided in New York. Indeed, prior to this action, the parties negotiated that the governing law of the contract was to be that of New York. *Cf. Rayco Mfg. Co. v. Chicopee Mfg. Corp.,* 148 F.Supp. 588, 592 (S.D.N.Y.1957) ("real reason" for chosen forum was to capitalize on prevailing attitude that the "Second Circuit is most uncharitable to

14. The "first-filed" rule is generally implicated in cases where one party, because of a similar suit pending elsewhere, seeks a stay of proceedings, or in the alternative, a transfer under § 1404(a). Defendants, in the instant action, have only moved for transfer. However, defendants suggest that plaintiff brought this action in the Southern District of New York in order to undercut defendants' efforts to have their antitrust claim heard in the Eastern District of Missouri. Nevertheless, the Court dis- cusses the first-filed rule now, because, as the discussion in the text indicates, the clear practice is for the courts to look to underlying considerations of fairness and convenience, applying basically the same factors relevant to transfer under § 1404(a), rather than treating it as a talismanic principle of decision. *See, e.g., Kerotest Mfg. Co. v. C–0–Two Fire & Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Factors, supra,* 579 F.2d at 218–19.

patents"). Furthermore, there are less special circumstances in this case suggesting transfer than in other cases where the issue has arisen. In particular, here there was a two month gap between filings, and the two suits do not necessarily embrace the same issues. *Cf. National Patent Development Corp. v. American Hospital Supply Corp.,* 616 F.Supp. 114, 117–18 (S.D.N.Y.1984) (Weinfeld, J.) (four days between filings and the suits involved identical issues). The foregoing discussion notwithstanding, the Court's focus in deciding whether to transfer this action remains overall convenience and efficiency in the administration of justice. Thus, despite the "first-filed" rule, the Court would not hesitate to order transfer if defendants were otherwise able to meet their burden. *See Id.* at 118–19; *Williams Gold Refining Co. v. Semi-Alloys, Inc.,* 434 F.Supp. 453, 456–57 (W.D.N.Y.1977), *appeal dismissed,* 580 F.2d 1046 (2d Cir.1978).

For the aforementioned reasons, the Court declines to view the filing of this lawsuit as an act of forum shopping by plaintiff, that would (according to defendants) obviate the need for them to sustain their burden of demonstrating that this district is a seriously inconvenient forum for the litigation. D. Reply Memo. at 44. Defendants may not escape their burden under § 1404(a) merely by alleging that plaintiff's forum selection was intended only to harass defendants.

Defendants have failed to make the requisite showing under § 1404(a). While it may be somewhat inconvenient for defendants to bring witnesses to New York, it would be just as inconvenient for plaintiff to bring its witnesses to Missouri. Defendants have failed to specify who will be called to testify in the transferee district, or as to what they might testify to. Moreover, there is a total absence of other factors which ordinarily indicate that trans-

fer is warranted. For example, defendants have not demonstrated that this case requires the introduction of voluminous documents or special evidence not otherwise accessible in New York. Moreover, in denying defendants' motion to transfer, the Court relies on the parties' choice of law governing the contract. *See Y⁴ Design, supra,* 428 F.Supp. at 1070. The Supreme Court lends credence to this view by implying, as discussed earlier, that choice of law provisions may be considered in deciding venue questions, *see Leroy, supra,* 443 U.S. at 186, 99 S.Ct. at 2718. The Court fails to see why such a contractual provision cannot similarly be considered in connection with a motion to transfer.

As to the convenience of the parties, in light of Schmitt's monthly trips here and his apparent familiarity with this State, *see* P. Memo. at 45–46, defendants can hardly argue that New York is a seriously inconvenient forum in which to litigate this action. Defendants also cannot plead persuasively financial or other inconvenience.[15] Since the defendant has not shown that the Eastern District of Missouri is a superior forum in terms of relative convenience of the parties, or in terms of accessibility to material witnesses, or tangible evidence, and given that the parties chose New York law as governing the interpretation of the contract at issue, there is no reason to disturb plaintiff's chosen forum. For all the foregoing reasons, defendant's motion to transfer is denied.

## CONCLUSION

This Court has personal jurisdiction over plaintiff's breach of contract claims against the corporate defendant pursuant to CPLR § 302(a)(1). The Court, however, does not have jurisdiction over plaintiff's tort claims against the corporate defendant, thus they are dismissed. Jurisdiction over the individual defendant is conferred upon the

---

**15.** Judge Newman, commented, in the context of the *forum non conveniens* doctrine, that:

[T]he assessment ... whether the balance ... strongly overcomes plaintiff's choice of forum must be made in light of the realities of modern transportation and communication. A forum is not necessarily inconvenient because

of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel. It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit. *Calavo Growers v. Belgium,* 632 F.2d 963, 969 (2d Cir.1980) (Newman, J., concurring).

Court pursuant to the nationwide service of process provision of 18 U.S.C. § 1965 and exercise of pendent jurisdiction. Venue is proper in this District over the corporate defendant pursuant to 28 U.S.C. § 1391(b), and over the individual defendant pursuant to 18 U.S.C. § 1965(a). Finally, defendants' motion to transfer this action to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a) is denied.

SO ORDERED.